**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PATRICIA KENNEDY,

        **Plaintiff,**

v.                                         **Case No:  6:17-cv-1579-Orl-40DCI**

BINDI, INC.,

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AFTER DEFAULT AND VERIFIED APPLICATION FOR ATTORNEY FEES, COSTS, EXPERT FEES AND LITIGATION EXPENSES (Doc. 12)** |
| **FILED:** | **February 13, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED without prejudice**.

## I.   BACKGROUND

### A.  The Complaint

Patricia Kennedy (Plaintiff) filed this action against Bindi, Inc. (Defendant), alleging that Defendant is in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182, *et seq*.  Doc. 1.

Plaintiff is a mobility-impaired ADA "tester" – someone who visits places of public accommodation for the purpose of verifying compliance with the ADA – from Broward County,

Florida.  *Id*. at ¶¶ 1, 9.  Defendant "owns, leases, leases to, or operates" P & K Food Store (P & K), "a place of public accommodation as defined by the ADA," which is located at 3350 South Park Avenue, Titusville, Florida 32780.  *Id*. at ¶ 2.

Plaintiff does not allege when she visited P & K, *see. id*. at ¶ 8,[1] but, nevertheless, alleged that "[a] preliminary inspection of P & K Food Store showed that [the following] violations exist[:]"

> i.  Defendant fails to adhere to a policy, practice and procedure to ensure that all goods, services and facilities are readily accessible to and usable by the disabled.
>
> ii.  Defendant fails to maintain its features to ensure that they are readily accessible and usable by the disabled.
>
> iii.  There is an insufficient number of compliant disabled parking spaces and access aisles, with missing access isles, lack of compliant signage and missing disabled parking signage.
>
> iv.  There is a lack of compliant accessible route connecting the disabled parking spaces with all the goods, services and facilities of the property with excessive slopes, non-compliant curb approaches, non-compliant ramps, abrupt changes in level, uneven ground surfaces, hazards on ground surfaces, and broken or cracked pavement/concrete.
>
> v.  There are non-compliant restrooms with non-compliant doorways, improper door hardware, lack of required clear floor space, insufficient maneuvering space, inaccessible commodes, lack of compliant grab bars, missing rear and side grab bars, flush controls on the wrong side, inaccessible sinks, improper sink hardware, unwrapped piping, poorly wrapped piping or piping falling [off], obstructions, and improperly located amenities.

*Id*. at ¶ 7.  Plaintiff alleged that she "plans to return to the property to avail herself of the goods and services offered to the public at the property, and to determine whether the property has been

---

[1] In response to the Court's ADA interrogatories, Plaintiff stated that she visited P & K on or about February 28, 2017.  Doc. 9-1 at 1.

made ADA complaint," *id*. at ¶ 8, but she provided no further details about when she plans on returning to the property, *see* Docs. 1; 12.

Plaintiff claims that she has and will continue to suffer "direct and indirect injury" as a result of Defendant's discrimination until Defendant is compelled to modify its property to comply with the ADA's requirements.  Doc. 1 at ¶ 13.  Thus, Plaintiff seeks a declaration that Defendant is in violation of Title III of the ADA.  *Id*. at 7.  Further, Plaintiff requests that the Court: 1) grant injunctive relief against Defendant requiring it to: a) "make all readily achievable alterations to the [property,]" b) "make [the property] readily accessible to and usable by individuals with disabilities to the extent required by the ADA[,]" and c) "make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities[;]" 2) grant an award of attorney fees, costs, and litigations expenses; and 3) grant all other remedies the Court deems just and proper.  *Id*. at 7-8.

### B.  Clerk's Default

Plaintiff filed a return of service indicating that Defendant was served on September 6, 2017, pursuant to Fla. Stat. § 48.081(3).  Doc. 8.  Defendant did not respond to the Complaint in the time provided under the Federal Rules of Civil Procedure.  Thus, the Clerk entered default against Defendant.  Doc. 11.

### C.  Motion for Default

Plaintiff filed a motion for entry of default judgment (Motion), in which she devotes three pages to explaining why she is entitled to default judgment, and 16 pages to explaining why she is

entitled to recover her attorney fees, costs, and litigation expenses. Doc. 12 at 2-19.[2] Plaintiff concludes by requesting that the Court: 1) enter default judgement against Defendant; 2) enjoin Defendant from discriminating against individuals with disabilities; 3) close P & K until Defendant completes all alterations necessary to bring the property into compliance with the ADA; and 4) award Plaintiff a total of $6,937.50 in attorney fees, costs, and litigation expenses, as well as an additional $1,000.00 for a re-inspection fee. *Id*. at 19.

## II.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me

---

[2] Plaintiff attaches several documents to the Motion, all of which relate to her request for attorney fees, costs, and litigation expenses. Docs. 12-1; 12-2; 12-3; 12-4; 12-5; 12-6; 12-7.

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

## III.   ANALYSIS

The Motion – which provides little, if any, meaningful argument demonstrating that Plaintiff is entitled to default judgment – is due to be denied because Plaintiff: 1) failed to establish that she has standing to bring this action; 2) has not stated a claim upon which relief may be granted; and 3) has not demonstrated that she is entitled to the relief requested in the Motion. The undersigned will address each issue in turn.

### A.  Standing

Plaintiff, as discussed in the following paragraphs, has failed to demonstrate that she has standing to bring this case. Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quotation omitted). Thus, the Court is required to consider standing *sua sponte* even if the parties have not raised the issue, because the Court must ensure that it has jurisdiction over the case before it rules on the merits of a party's claim. *See AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th

Cir. 2007) (explaining that a court is required to *sua sponte* consider whether a party has standing to bring the case).

A plaintiff must establish the following elements in order to have standing: 1) an injury-in-fact; 2) a causal connection between the injury and Defendant's conduct; and 3) that it is likely the injury will be redressed by a favorable ruling. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). A plaintiff seeking prospective, injunctive relief pursuant to Title III of the ADA must also plausibly show that the plaintiff will suffer disability discrimination by the defendant in the future. *Id.* This means that the threat of future injury must be a "real and immediate – as opposed to merely conjectural or hypothetical – threat of *future* injury." *Id.* Thus, "a plaintiff seeking an injunction under Title III either must 'have attempted to return' to the non-compliant building or at least 'intend to do so in the future.'" *Id.* at 1336. Courts have considered a number of nonexclusive factors when analyzing a plaintiff's intent to return and likelihood of suffering future discrimination, including: 1) the proximity of the defendant's business to the plaintiff's residence; 2) the plaintiff's past patronage of the defendant's business; 3) the definiteness of the plaintiff's plan to return; and 4) the frequency of the plaintiff's travel near the defendant's business. *See Id.* at 1327; *see also Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212, 1222-23 (M.D. Fla. 2012).

Plaintiff has failed to show "a real and immediate threat of future injury." First, the allegations establish that Plaintiff resides approximately 180 miles away from P & K. Doc. 1 at ¶¶ 1-2. This distance lessens the likelihood that Plaintiff will suffer a future injury at P & K. *See, e.g.*, *Kennedy v. Beachside Commercial Properties, LLC.*, Case No. 6:17-cv-1047-Orl-37GJK, 2017 WL 4243584, at *2 (M.D. Fla. Sept. 25, 2017) (finding that the likelihood of future injury in ADA case was lessened because plaintiff lived 174 miles away from defendant's business); *cf.*

*Houston*, 733 F.3d at 1336-37 (finding that a distance of 30.5 miles sufficed to establish standing, but noting that "different facts may demand a different conclusion" had the plaintiff lived "hundreds of miles away from the store with no particular reason to return").   Second, Plaintiff seemingly alleges that she visited P & K one time prior to filing this case.  *See* Docs. 1 at ¶ 8; *see also* 9-1 at 1.  Thus, Plaintiff is not a frequent visitor of P & K.  *See, e.g.*, *Longhini v. Gateway Retail Center, LLC*, Case No. 3:17-cv-899-J-32JBT, 2018 WL 623654, at *3 (M.D. Fla. Jan. 20, 2018) (finding one visit to defendant's business did not establish that plaintiff was a frequent visitor).  Third, Plaintiff merely states that she "plans to return" to P & K.  Doc. 1 at ¶ 8.  While a party need not specify an exact date of return, courts generally require more than a generalized "some-day" wish to return at an unspecified point in the near future.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64 (1992); *see also Access for the Disabled, Inc. v. Rosof*, Case No. 8:05-cv-1413-T-30TBM, 2005 WL 3556046, at *2 (M.D. Fla. Dec. 28, 2005).  Thus, Plaintiff does not come close to demonstrating any definite plan to travel 180 miles to P & K.  *See Beachside Commercial Properties*, 2017 WL 4243584, at *3 ("An intent to return in the future to a place once-visited without an additional connection to the area or reason to visit again does not suffice for standing.").  Finally, there are no allegations or evidence demonstrating that Plaintiff frequently travels near P & K.  *See* Docs. 1; 12.  Thus, in light of the foregoing, the undersigned finds that Plaintiff has not established a plausible threat that she will face future discrimination by Defendant.  Therefore, Plaintiff has not established that she has standing to seek prospective, injunctive relief against Defendant.

### B.  ADA Claim

Plaintiff, as discussed in the following paragraphs, has failed to state a claim under Title III of the ADA.  A party asserting a claim under Title III of the ADA must prove that: 1) he or she

is disabled; 2) defendant is a private entity that owns, leases, or operates a place of public accommodation; and 3) defendant denied him or her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant because of his or her disability. *Hoewischer*, 877 F. Supp. 2d at 1220-21. The allegations in the Complaint fail to establish the third and final element of a claim under Title III of the ADA.

First, Plaintiff does not identify the barriers she encountered at Defendant's property. A plaintiff may only complain of barriers actually encountered at a defendant's property. *See Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (finding that the plaintiff lacked standing to bring claims regarding the motel's designated accessible rooms because he failed to request an accessible room and thus did not experience discrimination related to the accessible room). Here, Plaintiff alleges that "[a] preliminary inspection" of P & K revealed that a number of barriers exists, which she goes on to describe in a vague manner. Doc. 1 at ¶ 7. Plaintiff, however, does not allege that she actually encountered the barriers described in the Complaint. *See* Doc. 1.[4] Thus, Plaintiff's allegations fail to demonstrate that Defendant denied her full and equal enjoyment of its property based on her disabilities.

Second, even if the Court infers that Plaintiff encountered the barriers listed in the Complaint, Plaintiff neither identifies the specific policy, practice, procedure, or feature that violates the ADA, nor does she explain how each policy, practice, procedure, or feature fails to comply with the ADA and the applicable regulations. *See* Doc. 1. Thus, the Court cannot determine what specific barriers Plaintiff encountered and whether those barriers violate the ADA and the applicable regulations. Therefore, Plaintiff's vague allegations fail to demonstrate that

---

[4] The undersigned notes that Plaintiff subsequently alleges that she "encountered barriers at the subject property[,]" but she does not allege that those were the same barriers identified earlier in the Complaint. Doc. 1 at ¶ 8.

Defendant denied her full and equal enjoyment of its property based on her disabilities.  *See Kennedy v. Paniccia-Indialantic, LLC*, Case No. 6:16-cv-2208-Orl-31DCI, 2017 WL 5178182, at *4 (M.D. Fla. Nov. 8, 2017) (dismissing complaint containing similar vague allegations); *Kennedy v. Baugher*, Case No. 6:17-cv-732-Orl-40GJK, Doc. 17 at 4 (M.D. Fla. July 13, 2017) (same).

Third, Plaintiff does not plead whether P & K is a pre-existing building as defined under the ADA.[5]  Instead, Plaintiff conditionally pleads that "[t]o the extent" P & K existed prior to January 26, 1993, Defendant had a continuing obligation to remove architectural barriers.[6]  Doc. 1 at ¶ 5.  The Eleventh Circuit has explained the standard to be applied to pre-existing buildings as follows:

> Congress enacted the ADA on January 25, 1993.  After this date, facilities have to meet exacting design and implementation standards to be in compliance with the ADA.  The ADA imposes different requirements on the owners and operators of facilities that existed prior to its enactment date.  For those facilities, the ADA states that discrimination includes a private entity's "failure to remove architectural barriers . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  Where removal is not "readily achievable," failure of the entity to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA.  42 U.S.C. § 12182(b)(2)(A)(v).
>
> The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable."  These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of

---

[5] A "pre-existing building" under the ADA is one that existed on or before January 25, 1993.  *See* 42 U.S.C. § 12183(a).

[6] Plaintiff also conditionally pled what would have been required if P & K was constructed or altered after January 25, 1993.  Doc. 1 at ¶ 5.

such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. *Id.*

. . .

[P]laintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case. *Colorado Cross* [*Disability Coalition v. Hermanson Family Ltd.*], 264 F.3d [999,] 1007 [(10th Cir. 2001)]. If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." *Id.* at 1002-03; *see also White v. Cinemark USA, Inc.*, 2005 WL 1865495 at *6 (E.D. Cal. 2005); *Access Now, Inc. v. So. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001); *Ass'n for Disabled Ams., Inc. v. Claypool Holdings, LLC*, 2001 WL 1112109 at *26 (S.D. Ind. 2001); *Pascuiti v. New York Yankees*, 1999 WL 1102748 at *4 (S.D.N.Y. 1999).

*Gathright-Dietrich v. Atl. Landmarks, Inc.*, 452 F.3d 1269, 1272-74 (11th Cir. 2006); *see also*

*Access for the Disabled, Inc. v. Osceola Enters. of Kissimmee, Inc.*, Case No. 6:09-cv-1805-Orl-

31GJK, 2010 WL 2889823, at *1 (M.D. Fla. July 22, 2010) (stating that it was unclear whether

Plaintiff had standing to challenge the alleged violations, and explaining that "Plaintiffs may only

challenge those barriers that reasonably relate to their particular disabilities and for which removal

is readily achievable."). Thus, given Plaintiff's failure to definitively allege whether or not P & K

is a "pre-existing building" under the ADA, the Court cannot determine what standard to apply,

which, in turn, inhibits the Court from determining whether Plaintiff has stated a claim against

Defendant.

Fourth, to the extent P & K is a "pre-existing building" under the ADA, Plaintiff does not

allege that removal of the architectural barriers she encountered would be "readily achievable" or

that there exists "readily achievable" alternatives for P & K to make its goods, services, and

facilities available to Plaintiff. *See* Doc. 1. A number of courts in this District have concluded

that such allegations are necessary to state a claim for relief, and, thus, the failure to include such

allegations warrants dismissal for failure to state a claim.  *See, e.g.*, *Kennedy v. Mi Tierra Authentic Mexican Rest. Inc.*, Case No. 6:17-cv-1949-Orl-40TBS, Doc. 17 (M.D. Fla. Feb. 20, 2018) (finding that plaintiff failed to state a claim for relief, in part, because she did not allege that removal of the barriers she encounter was readily achievable); *Larkin v. Cantu LLC*, Case No. 6:15-cv-1544-Orl-40KRS, 2017 WL 2684422, at *5 (M.D. Fla. May 31, 2017) (similar), *report and recommendation adopted by* 2017 WL 2672617 (M.D. Fla. June 21, 2017).

Therefore, in light of the foregoing, the undersigned finds that Plaintiff's vague and formulaic allegations – which have been repeatedly criticized by courts in this District – do not state a claim under Title III of the ADA.

## C.  The Relief

Finally, Plaintiff has failed to provide the specificity necessary for the entry of an injunction.  "Pursuant to Rule 65, every injunction must 'state its terms specifically' and 'describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'"  *Access for the Disabled*, 2010 WL 2889823, at *1 (citing Fed. R. Civ. P. 65(d)(1)).  Plaintiff has not provided any such reasonable detail.  In fact, Plaintiff expressly requests a broad, non-specific injunction that enjoins Defendant "from discriminating against individuals with disabilities, [and] closing the subject facilities until completion of all alterations necessary to make the premises accessible by individuals with disabilities and otherwise in compliance with the ADA."  Doc. 12 at 19.  But the "Court simply cannot enjoin a party 'from discriminating against individuals with disabilities' and order compliance with 'all sections' of the ADA."  *Access for the Disabled*, 2010 WL 2889823, at *1 ("To be entitled to injunctive relief, Plaintiffs must, at a minimum, specifically identify each architectural barrier that they contend violates the ADA (or its relevant implementing regulations) and offer some evidence as to why

the removal of same is readily achievable and beneficial to Plaintiffs.").  Therefore, even if Plaintiff was entitled to default judgment, the undersigned finds that she is not entitled to the injunctive relief she requests in the Motion.

## IV.    CONCLUSION

Accordingly, it is **RECOMMENDED** that:

1.  The Motion (Doc. 12) be **DENIED without prejudice,** and

2.  Plaintiff be **GRANTED** leave to file an amended motion for default judgment on or before the fourteenth day after the date the Court enters its Order on this Recommendation.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 26, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy